## DOMINGUEZ v. DOMINGUEZ.

Where the plaintiff filed a bill in equity in 1852, to set aside a sale of land made in 1835, on the ground of fraud : *Held*, that his right to recover would be barred by ten years' prescription under the Mexican law, and that the full period having run, he could not recover.

*Per Murray, C. J.*—Courts of Equity generally follow the analogy of the law in cases where Statutes of Limitation are invoked ; one of the defences peculiar to equity being the lapse of time or staleness of the demand.

In a chancery case, where the jury are summoned to find certain issues of fact, which, when found, are not obligatory, but simply obtained for the purpose of informing the conscience of the Chancellor, *it seems* that it is no error to refuse to instruct the jury as to what would be the law on a given state of facts. In such a case the jury find the facts, and if the Court adopt the finding, it applies the law.

APPEAL from the District Court of the First Judicial District, County of Los Angeles.

The appellant filed a bill in chancery to set aside a sale of land made by him to his brother in 1835.

The grounds substantially relied on are, that their father died during the minority of the plaintiff; that Manuel, the respondent, took charge of the property of the estate, and acted in the capacity of " executor " until the death of their mother, and after her death, down to the time of commencing this action ; that while in possession of the property of said estate, (which consisted of a ranch and cattle,) in the year 1835, he delivered to the plaintiff a number of horses, etc., as his share of the stock ; that the plaintiff signed a paper which the defendant represented to him to be a receipt for said cattle, but which, he subsequently discovered, was a deed for his individual interest in said ranch. The bill alleges fraud, and prays for a cancellation of said deed, etc.

The answer denies all the allegations of the bill. On the trial of the cause, the Court directed special issues to be framed, and sent to a jury. The facts found were all in favor of the defendants, and against the allegations of the plaintiff. Upon this special verdict, the Court rendered a decree in favor of the defendant, from which plaintiff appealed.

*Sloan & Hartman* for Appellant.

The plaintiff asked the Court to instruct the jury that where a person takes upon himself the executorship of an estate, and takes actual possession thereof, he continues in law to be such executor until he surrenders such estate, and renders an account thereof as required by law, and cannot exonerate himself by delivering such estate to any person not legally authorized to receive the same. But the Court refused to give this instruction, and the plaintiff immediately excepted.

But if the conveyance to the respondent is to be sustained upon any just principle of law, it does not follow that the complainant's bill should have been dismissed.

It was impossible that a final decree could have been rendered in the case, with any certainty of being right or proper, without the taking of an account of all the personal property which came into the hands of the respondent, of its increase, and of the profits and disposition of the same.

No account of any kind has yet been rendered, nor has any formal surrender of the estate to the respective heirs been made.

Until such steps have been taken, the Statute of Limitations does not commence running. One who holds the property of others in his hands, whatever may be the form of the trust under which he holds it, cannot claim the running of the statute in his favor, until he surrenders it up, and divests himself of his trust, or by some open act or declaration, claims to hold adversely to the *cestui que trust*, and not then unless the *cestui* has notice of such adverse holding. It is not denied that Courts of Chancery are usually unwilling to decree an account when the transaction has become obscure and entangled by time. There is, however, no certain definite rule on the subject; each case must depend upon the exercise of a sound discretion arising out of the circumstances. Rayner *v.* Pearsal, 3 J. Ch. R., 578, 586.

There is not, in this case, any proof of an open, avowed, adverse holding, on the part of the respondent, to warrant the application of the Statute of Limitations.

*J. Lancaster Brent* for Respondent.

Courts of Equity will not encourage stale demands, unless an excuse for the delay be shown.

Here, whatever right accrued, accrued in 1835. The complaint was filed in October, 1852, more than seventeen years after the cause of action accrued.

What reason does the appellant show for not bringing his action before? The only one he alleges is, that he was ignorant of the existence of the deed until 1848, and this allegation is shown to be false.

Even if he had equities, which the special verdict negatives, it is yet submitted that equity will not hear his demands upon account of his long silence.

The single and only authority, quoted in the brief of appellant, affirms this doctrine. Rayner *v.* Pearsall, 3 J. Ch. R., 586.

In cases of admitted fraud, eighteen years has been held in the English Courts as a complete bar against setting aside a purchase made by a solicitor from his client. Champion *v.* Rigley, 1 Russell & M., 534.

And in a case where the purchaser of the equity of redemption, belonging to infants, fraudulently colluded with the executrix,

and the facts were undenied, yet the Lord Chancellor held eighteen years a complete bar. See the unreported case of Bonny v. Redyard, quoted in Beckford et al. v. Wade, in 17 Vesey, 97–8, and there relied on.

The whole doctrine applicable to this branch of the case, is to be found in 2 Spence's Equitable Jurisdiction, 60, 62.

These are cases of admitted fraud, but here every allegation of fraud is negatived by the verdict, and these cases borrow somewhat from the analogy of the Statute of Limitations of twenty years; but in the case at bar, the analogy of the Spanish law is to be regarded, and there the equivalent limitation is ten years. But how could this instruction be pertinent to the special issues, because it is to be borne in mind that the jury found no general verdict, but only special matters, submitted to them? What bearing could it have had on the case? Admitting that the respondent was the constructive executor of the estate of his father, Cristobal Dominguez, who died in 1825, how can that effect the purchase of the interest of appellant in lands, made in 1835, in good faith, for a fair consideration, and without undue influence?

But, as before was remarked, this issue was immaterial, and the intervention of the jury was only to assist the conscience of the Court. The Court was at liberty to have disregarded the finding altogether, and to have rendered a judgment according to its understanding, as already decided in this Court.

MURRAY, C. J., after stating the facts, delivered the opinion of the Court.

The first error assigned by the appellant, is the refusal of the Court to instruct the jury as requested. There was no error in this; First, because this being a chancery case, and the jury having been summoned to ascertain certain issues of facts, which, when found, were not obligatory, but simply desired for the purpose of informing the conscience of the Chancellor, there was no use or propriety in the Court instructing them as to what would be the law upon a given state of facts. It was their duty to find the facts, and if the Court adopted their findings, it was its duty to apply the law. Second, admitting the instruction to have been correct, as a mere legal proposition, the evidence distinctly shows that during the lifetime of his mother, the defendant had not acted as the executor of his father's estate, but had assisted her in taking charge of the property, she being in possession by virtue of her right to one-half of the property of the *husband*, as well as the testamentary. guardian and coëxecutrix of her husband's estate; and that immediately upon her death, the defendant delivered up all the property in his possession to her executor.

Dominguez *v.* Dominguez.

The second error assigned, is the refusal of the Court to set aside the verdict, because the first finding was not supported by the testimony, as the Court itself acknowledged. This finding is wholly immaterial, and cannot affect the case. Besides, it was shown by the evidence, and found by the jury, that the executor of the widow took possession of the estate in the Spring of 1834, and if such was the case, the plaintiffs' connection with the estate previous to that time, could not invalidate a conveyance made one year after.

The remaining errors assigned are, that the Court erred in entering a decree upon the verdict, and in refusing to order an account between the parties.

The Court was compelled to enter judgment for the defendant, because the plaintiff had not sustained by testimony a single allegation of his bill. On the other hand, the evidence only exculpated the defendant of all fraud, and showed that the plaintiffs' claim rested, for its foundation, upon bald and naked assertion.

There was no error in refusing to order an account, because it was not asked for in the bill, and if it had been, under the case made by the evidence, it would have been improper.

There is another ground on which this decision might be placed with great propriety. That is, that Courts of Equity ought not to afford a form for the prosecution of stale and uncertain demands. After sleeping upon his rights for nineteen years, a party should not be allowed to come into Court, and demand relief in a case like the present. As a general proposition, Courts of Equity will follow the analogy of the law, in cases where the Statute of Limitations is invoked, but they are not always governed by this rule. One of the defences peculiar to a Court of Equity, is the lapse of time, or staleness of the demand. In some instances, they have refused to entertain a bill to set aside a conveyance confessedly fraudulent, on the ground that the party had slept too long on his rights, and that the peace and tranquility of the community ought not to be disturbed by encouraging such litigation. In addition to this, the plaintiffs' right of recovery would be barred by ten years' prescription, under the Mexican law, the full period of which had run, long before bringing this suit.

Judgment affirmed.

BURNETT, J.—I concur in the judgment, and place my opinion upon the last ground mentioned by the Chief Justice.