Filed 8/1/18; Certified for publication 8/28/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERTO MARTINEZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> LANDRY'S RESTAURANTS, INC., <br><br> Defendant and Respondent. | B278513 <br><br> (Los Angeles County Super. Ct. No. BC377269) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allan J. Goodman, Judge.  Affirmed.

Righetti Glugoski, Matthew Righetti and John Glugoski for Plaintiffs and Appellants.  Restaurant

Law Offices of Mary E. Lynch, Mary E. Lynch; Sheppard, Mullin, Richter & Hampton and Charles F. Barker for Defendant and Respondent Landry's Restaurants, Inc.

_____

Roberto Martinez, Lisa Saldana, Craig Eriksen and Chanel Rankin-Stephens (collectively Martinez parties) sued Crab Addison, Inc., Ignite Restaurant Group, Inc. (formerly known as Joe's Crab Shack Holdings, Inc.) and Landry's Restaurants, Inc. on behalf of a putative class of salaried employees of Joe's Crab Shack restaurants in California who were allegedly misclassified as exempt managerial/executive employees and unlawfully denied overtime pay. On August 3, 2016 the trial court granted a motion to dismiss pursuant to Code of Civil Procedure sections 583.310 and 583.360,[1] finding the Martinez parties had failed to bring their lawsuit to trial within five years, as extended. On appeal the Martinez parties argue the court abused its discretion in refusing to exclude from its calculation of the mandatory five-year period 319 days during which a writ petition challenging that court's order to produce the names and contact information for putative class members was pending (see *Crab Addison, Inc. v. Superior Court* (2008) 169 Cal.App.4th 958 (*Joe's Crab Shack I*)), 169 days between the notice of remand following removal of the case to United States District Court and the Ninth Circuit's order affirming the District Court's remand, and a nine-month period between the court's order granting the Martinez parties' motion to compel production of electronically stored information and full compliance with that order. We affirm.

---

[1] Statutory references are to this code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Parties*

 a. *The Martinez parties*

Martinez, Saldana, Eriksen and Rankin-Stephens are current or former employees of Joe's Crab Shack restaurants in California. Martinez filed the original complaint in this lawsuit on September 7, 2007, seeking to represent a class of salaried Joe's Crab Shack employees on claims they had been misclassified as exempt managerial/executive employees and were entitled to overtime pay. The complaint also alleged meal period, rest period and wage statement claims.

In March 2010 the trial court denied Martinez's motion for class certification on the ground he was not an adequate class representative. Martinez did not appeal that order. The trial court permitted Saldana, Eriksen and Rankin-Stephens to join the lawsuit as named plaintiffs and putative class representatives.

 b. *The restaurant entities*

The only defendant named in Martinez's complaint was "Joe's Crab Shack, Inc.," a nonexistent entity, plus 50 Doe defendants. Eventually, the named defendants were Landry's Restaurants, Inc., which owned the Joe's Crab Shack restaurant chain through November 16, 2006; Crab Addison, Inc., which owned the chain during the proceedings in the trial court; and Ignite Restaurant Group, Inc. (formerly known as Joe's Crab Shack Holdings, Inc.), Crab Addison, Inc.'s parent.

On June 15, 2017, while this appeal was pending, we were notified by counsel that on June 6, 2017 Ignite Restaurant Group, Inc. and Crab Addison, Inc. had filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code in the

United States Bankruptcy Court for the Southern District of Texas.  On June 29, 2017 we stayed the case as to those two parties, but directed it proceed as to Landry's Restaurants.  In a status report filed June 28, 2018 counsel for the Martinez parties advised the court that they had filed proofs of claim in the bankruptcy proceedings against Ignite Restaurant Group and Crab Addison; Ignite Restaurant Group and Crab Addison objected to the claims; and the matter is now set for trial in the bankruptcy court on December 3, 4 and 5, 2018.  Accordingly, this appeal is proceeding only between the Martinez parties and Landry's Restaurants.[2]

> 2. *Events Through Our February 26, 2015 Remand in* Martinez v. Joe's Crab Shack Holdings *(2014) 231 Cal.App.4th 362*
>   a. *Crab Addison's writ petition*

In December 2007, several days after filing a first amended complaint, Martinez served special interrogatories seeking, among other items, the identity and contact information for putative class members, that is, for current or former salaried employees of Joe's Crab Shack restaurants in California.  Crab Addison objected on the ground the interrogatories sought confidential and private information.  On April 30, 2008 the trial court granted Martinez's motion to compel Crab Addison to provide the requested names and contact information.  On May 19, 2008 the court clarified its April 30 order and granted Martinez's additional motion to compel Crab Addison to identify and provide contact information for potential employee witnesses.

[2]     The Chapter 11 liquidation plan filed in 2017 by Ignite Restaurant Group reflects an agreement to sell the Joe's Crab Shack chain and another restaurant chain to Landry's, Inc.

4

On May 29, 2008 Crab Addison filed a petition for writ of mandate in this court, challenging the trial court's discovery orders. On June 3, 2008 we ordered Martinez to file a response to the writ petition and stayed enforcement of the trial court's April 30, 2008 and May 19, 2008 discovery orders pending further order of this court. The writ proceeding was actively litigated through December 30, 2008 when we filed our decision in *Joe's Crab Shack I, supra,* 169 Cal.App.4th 958, denying the writ petition and upholding the trial court's orders compelling disclosure of the relevant employees' names and contact information. A petition for rehearing was denied on January 14, 2009; the Supreme Court denied review on March 18, 2009; and the remittitur, certifying that our decision had become final, issued on April 13, 2009. A total of 319 days elapsed between Crab Addison's filing of its petition and the issuance of our remittitur.[3]

Although we stayed enforcement of the order compelling discovery of putative class members' names and contact information while Crab Addison's writ petition was pending, the parties continued to litigate other aspects of the case in the trial court, including engaging in written and deposition discovery.

b. *Removal to federal court*

On March 25, 2009, 19 days before the issuance of our remittitur in the writ proceeding, Crab Addison and Joe's Crab Shack Holdings filed notice that they had removed Martinez's

---

[3]    The Martinez parties claim the relevant period is 331 days, measuring it from the date the trial court granted the motion to compel further discovery responses rather than the date on which Crab Addison filed its petition for writ of mandate in this court.

lawsuit to federal court under the Class Action Fairness Act of 2005 (CAFA) (28 U.S.C. § 1332(d)).[4]  On June 4, 2009 the district court granted Martinez's motion to remand, finding that Crab Addison and Joe's Crab Shack Holdings had failed to carry their burden of establishing the requisite $5 million amount in controversy.[5]  The court's clerk sent notice of remand, together with a certified copy of the order of remand, to the state court on June 8, 2009, 75 days after removal.

On September 30, 2009 the Ninth Circuit issued an order permitting Crab Addison and Joe's Crab Shack Holdings to appeal the district court's order of remand.  On November 24, 2009 the Ninth Circuit affirmed the order of remand.  During the 169 days between the clerk's notice of the order of remand and the Ninth Circuit's affirmance of the district court's order,[6] the

---

[4]     CAFA expanded the federal courts' discretion to exercise diversity jurisdiction over class actions, permitting federal jurisdiction under specified circumstances when the aggregate amount of the plaintiffs' claims exceeds $5 million (28 U.S.C. § 1332(d)(2), (d)(6)) and at least one plaintiff is diverse from at least one defendant (28 U.S.C. § 1332(d)(2)(A)).

[5]     The district court rejected the argument that the removal by Crab Addison and Joe's Crab Shack Holdings under CAFA was untimely.

[6]     A total of 114 days elapsed between the date the district court clerk sent the notice of remand, which returned jurisdiction to the superior court, and the date the Ninth Circuit accepted Crab Addison and Joe's Crab Shack Holdings' appeal of the district court's remand order.  The appeal was pending for an additional 55 days.

parties continued to engage in discovery activities in the trial court.

c. *Appeal of the denial of class certification*

In June 2011 the Martinez parties moved for certification of a class consisting of "[a]ll persons employed by Defendants in California as a salaried restaurant employee in a Joe's Crab Shack restaurant at any time since September 7, 2003." In support of their motion the Martinez parties submitted training and operation manuals, as well as deposition testimony and declarations from former and current employees of Joe's Crab Shack restaurants, to establish that hiring, training and operations practices are uniform throughout the chain. (See *Martinez v. Joe's Crab Shack Holdings* (2014) 231 Cal.App.4th 362, 368 (*Joe's Crab Shack II*).) The employee declarations were largely from individuals employed as assistant managers. They all stated they routinely worked more than 55 hours per week and spent the majority of time performing tasks ordinarily performed by hourly employees (for example, filling in when needed as cooks, servers, bussers or kitchen staff), for which they received no overtime compensation. (*Id*. at p. 369.)

The trial court denied the motion for class certification on May 23, 2012. Based on Saldana's, Eriksen's and Rankin-Stephens's concession at their depositions that the amount of time they spent on particular tasks varied from day to day and their inability to estimate the number of hours spent on individual exempt and nonexempt tasks, the court found that they had failed to establish that their claims were typical of the class or that they could adequately represent the class. In addition, although acknowledging the existence of common questions of law and fact, the court, citing evidence provided by

7

the restaurant entities, concluded there remained significant individual disputed issues of fact relating to the amount of time spent by each class member on particular tasks.  As a result, the court ruled common questions did not predominate and a class action would not be the superior means of resolving the litigation. (*Joe's Crab Shack II*, *supra*, 231 Cal.App.4th at pp. 371-372.)

The Martinez parties filed a notice of appeal on July 13, 2012.  We initially reversed the trial court's order in a nonpublished decision filed November 12, 2013.  As we noted in our opinion, *Duran v. U.S. Bank National Assn.* (2014) 59 Cal.4th 1 (*Duran*) was then pending before the Supreme Court.  Following our decision, the Supreme Court granted the restaurant entities' petition for review and eventually transferred the matter to us on July 30, 2014 for reconsideration in light of its decision in *Duran*.

On November 14, 2014 we filed our revised opinion, once again reversing the trial court's order.  (*Joe's Crab Shack II*, *supra,* 231 Cal.App.4th 362.)  We held, in light of the principles established in *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319 (*Sav-On*), *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, *Duran*, *supra*, 59 Cal.4th 1, and *Ayala v. Antelope Valley Newspapers, Inc.* (2014) 59 Cal.4th 522 (another then-recent Supreme Court decision discussing the predominance issue in the context of a wage and hour class action), the trial court had failed to adequately assess the means by which the Martinez parties' theory of recovery could be proved through resolution of common questions of fact and law.  In particular, we explained, "courts in overtime exemption cases must proceed through analysis of the employer's realistic expectations and classification of tasks rather than asking the

8

employee to identify in retrospect whether, at a particular time, he or she was engaged in an exempt or nonexempt task." (*Joe's Crab Shack II*, at p. 382.) We also stated, "[W]e understand from *Brinker*, *Duran* and *Ayala* that classwide relief remains the preferred method of resolving wage and hour claims, even those in which the facts appear to present difficult issues of proof. By refocusing its analysis on the policies and practices of the employer and the effect those policies and practices have on the putative class, as well as narrowing the class if appropriate, the trial court may in fact find class analysis a more efficient and effective means of resolving plaintiffs' overtime claim." (*Id.* at p. 384.)

A petition for rehearing was denied on December 3, 2014. The Supreme Court denied review on February 11, 2015. Our remittitur issued on February 26, 2015, returning jurisdiction over the case to the trial court. A total of 958 days (two years, 228 days) elapsed between the filing of the Martinez parties' notice of appeal and issuance of our remittitur.

3. *Discovery Issues Following Remand*

On January 16, 2015, prior to the Supreme Court's denial of review and our issuance of the remittitur in the class certification appeal, the Martinez parties propounded additional discovery directed to class action issues, including an e-discovery request seeking production of all electronic mail communications between September 7, 2003 and the date of the request related to the "realistic expectations of the salaried positions in a Joe's Crab Shack Restaurant," the "expectations" for those positions and the discretion or independent judgment enjoyed by employees in those positions. When nothing was produced, the Martinez parties moved on July 7, 2015 to compel further responses from

9

Crab Addison and Ignite Restaurant Group.[7] On September 28, 2015 the court granted the motion to compel in part, ordering production of electronically stored information, but limiting the search terms to be used and imposing other conditions relating to issues of technological feasibility. The court directed the parties to meet and confer regarding a protective order, to discuss potential sampling techniques and to develop a written inspection protocol.[8]

Actual production of electronically stored information did not occur until April 26, 2016 at which point Crab Addison and Ignite Restaurant Group provided more than 83,000 pages of responsive material, primarily emails. During this period the court set periodic status conferences, approximately every two weeks, for an update on compliance with its discovery order. At a May 10, 2016 hearing counsel for Crab Addison and Ignite Restaurant Group represented that all remaining documents

---

[7] In their reply brief the Martinez parties explain, albeit without any citation to the appellate record, that Landry's Restaurants had responded to the e-discovery demand by stating it retained no records, including emails, when it sold the restaurant chain to Joe's Crab Shack Holdings in November 2006. Accordingly, the motion to compel was directed only to Crab Addison and Ignite Restaurant Group, not Landry's Restaurants.

[8] Although the court's tentative ruling stated it intended to schedule a hearing on a class certification motion when it heard the motion to compel, no such hearing date was set on September 28. The court did schedule a further hearing to monitor continuing e-discovery issues.

would be produced within the next few weeks.  Additional materials were provided through the end of June 2016.

4. *Martinez's Motion To Set Trial and the Motion To Dismiss*

On June 30 or July 1, 2016[9] the Martinez parties moved to sever Martinez's individual claims (as discussed, the court had previously ruled he could not serve as a class representative) and to set them for trial within the next 45 to 60 days.  Alternatively, the Martinez parties asked the court to confirm that the five-year period to bring their class action to trial, with appropriate tolling, did not expire until July 23, 2017 and to set a trial date to take place after the court ruled on class certification but before July 23, 2017.

On June 30, 2016 Crab Addison and Ignite Restaurant Group moved to dismiss the action with prejudice pursuant to sections 583.310 and 583.360 on the ground the Martinez parties had failed to bring their lawsuit to trial within five years, as extended.  On July 7, 2016 Landry's Restaurants filed a notice of joinder in the motion to dismiss.

Both sides' motions were fully briefed.  On August 3, 2016, after hearing argument, the court granted the motion to dismiss the case, agreeing with Crab Addison, Ignite Restaurant Group and Landry's Restaurants' position that the five-year period had been extended only a total of 1,033 days (75 days during the

---

[9]     The Los Angeles Superior Court's case summary indicates the Martinez parties' motion was filed on June 30, 2016.  The Martinez parties' opening brief gives the filing date as July 1, 2016; the table of contents in their Appellants' Appendix gives the date as June 29, 2016.  The copy of the document included in the Appellants' Appendix has no file stamp.

11

period of removal to federal district court and 958 days during the class certification appeal), and that the time to bring the action to trial had expired on August 26, 2015. The court ordered the Martinez parties' motion to set trial off-calendar as moot.

Judgment was entered on August 24, 2016.

## CONTENTIONS

The parties agree the jurisdiction of the trial court was suspended for a total of 1,033 days while the action was pending in the federal district court following removal (75 days) and during the Martinez parties' appeal of the denial of their motion for class certification (958 days). The Martinez parties concede there are no other mandatory exclusions from the five-year period to bring an action to trial but contend it was impossible, impracticable or futile to bring the action to trial during the writ proceedings reviewing the order to produce contact information for putative class members (319 days), the time between the district court's order remanding the case following removal and the Ninth Circuit's affirmance of that order (169 days), and the nine-month period between the order to produce electronically stored information and full production of that material.[10]

_____

[10] During its 10-year-plus history, this lawsuit has been assigned to several different departments of the Los Angeles Superior Court; and a number of judges have had responsibility for the case and decided substantive motions. Most recently, Judge Michael J. Raphael oversaw discovery proceedings following our reversal of the class certification order. While Judge Raphael was sitting by assignment with the court of appeal, however, the motion to dismiss was heard by Judge Allan J. Goodman. We reject as not legally cognizable the Martinez parties' complaint that Judge Goodman, who had the benefit of extensive briefing and oral argument before granting

12

## DISCUSSION

1. *Sections 583.310 and 583.340 and the Standard of Review*

Section 583.310 provides, "An action shall be brought to trial within five years after the action is commenced against the defendant." In computing the five-year period within which an action must be brought to trial, however, "there shall be excluded the time during which any of the following conditions existed: [¶] (a) The jurisdiction of the court to try the action was suspended. [¶] (b) Prosecution or trial of the action was stayed or enjoined.[11] [¶] (c) Bringing the action to trial, for any other reason, was impossible, impracticable, or futile." (§ 583.340.)[12] Dismissal is

---

the motion, was not sufficiently familiar with the facts of the case to exercise informed discretion in determining whether it was impossible, impracticable or futile to bring the action to trial within the period mandated by sections 583.310 and 583.340

[11] Section 583.340, subdivision (b), applies only when a stay encompasses all proceedings in the action and does not include partial stays. (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 722; see *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1094.)

[12] In addition to the tolling provisions of section 583.340, section 583.350 provides, "If the time within which an action must be brought to trial pursuant to this article is tolled or otherwise extended pursuant to statute with the result that at the end of the period of tolling or extension less than six months remains within which the action must be brought to trial, the action shall not be dismissed pursuant to this article if the action is brought to trial within six months after the end of the period of tolling or extension."

13

mandatory if the requirements of section 583.310 are not met and an exception provided by statute does not apply. (§ 583.360, subd. (b); *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1090 (*Gaines*); see *McDonough Power Equipment Co. v. Superior Court* (1972) 8 Cal.3d 527, 530.)

"Under 583.340(c), the trial court must determine what is impossible, impracticable, or futile 'in light of all the circumstances in the individual case, including the acts and conduct of the parties and the nature of the proceedings themselves. [Citations.] The critical factor in applying these exceptions to a given factual situation is whether the plaintiff exercised reasonable diligence in prosecuting his or her case.' [Citations.] A plaintiff's reasonable diligence alone does not preclude involuntary dismissal; it is simply one factor for assessing the existing exceptions of impossibility, impracticability, or futility. . . . Determining whether the subdivision (c) exception applies requires a fact-sensitive inquiry and depends 'on the obstacles faced by the plaintiff in prosecuting the action and the plaintiff's exercise of reasonable diligence in overcoming those obstacles.' [Citation.] "'[I]mpracticability and futility" involve a determination of "'*excessive* and *unreasonable* difficulty or expense,'" in light of all the circumstances of a

---

Here, the additional 1,033 days during which the trial court was without jurisdiction extended the five-year period from September 7, 2012 to July 7, 2015. Because the period of tolling resulting from the appeal in *Joe's Crab Shack II, supra,* 231 Cal.App.4th 362 ended on February 26, 2015, less than six months before July 7, 2015, the trial court ruled pursuant section 583.350 that the Martinez parties had six months from February 26, 2015—that is, until August 26, 2015—to bring the action to trial.

14

particular case.'" (*Bruns v. E-Commerce Exchange, Inc*. (2011) 51 Cal.4th 717, 730-731 (*Bruns*); see also *Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 438.)

The plaintiff bears the burden of proving the circumstances justifying application of section 583.340, subdivision (c)'s exception for impossibility, impracticability or futility. (*Bruns, supra*, 51 Cal.4th at p. 731.) "[A] condition of impossibility, impracticability, or futility need not take the plaintiff beyond the five-year deadline to be excluded; it will be excluded even if the plaintiff has a reasonable time remaining after the period to bring the case to trial." (*Gaines, supra*, 62 Cal.4th at p. 1101.) But the plaintiff must establish a causal connection between the claimed circumstances of impracticability and the plaintiff's failure to move the case to trial. (*Ibid.;* see *DeSantiago v. D & G Plumbing, Inc*. (2007) 155 Cal.App.4th 365, 372; *Tamburina v. Combined Ins. Co. of America* (2007) 147 Cal.App.4th 323, 328.)

We review for an abuse of discretion the trial court's determination not to exclude periods during which plaintiffs contend it was impossible, impracticable or futile to bring the action to trial within the meaning of section 583.340, subdivision (c). (*Gaines, supra*, 62 Cal.4th at p. 1100 & fn. 8 [the abuse of discretion standard "has long been applied in this context"]; *Bruns, supra*, 51 Cal.4th at p. 731 ["[t]he trial court has discretion to determine whether that exception applies, and its decision will be upheld unless the plaintiff has proved that the trial court abused its discretion"].)

15

2. *The Appeal of the District Court's Remand Order Did Not Make It Impracticable or Futile To Bring the Case to Trial Within the Statutory Period*

The trial court lost jurisdiction on March 25, 2009 when Crab Addison and Joe's Crab Shack Holdings filed notice the case had been removed to federal court. When the clerk of the district court sent notice of remand on June 8, 2009, 75 days later, the trial court once again had jurisdiction over the action: "The appeal of a remand order does not deprive the state court of jurisdiction unless a stay is obtained from the federal court. [Citations.] '[T]he pendency of the federal appeal [does] not, in and of itself, serve to oust the state court of jurisdiction to proceed.' [Citation.] Although a removal petition deprives the state court of jurisdiction as soon as it is filed and served upon the state court, jurisdiction returns to the state court when a remand order is filed and served on the state court, unless that order is stayed." (*People v. Bhakta* (2006) 135 Cal.App.4th 631, 636.)

Although jurisdiction was returned to the superior court on June 8, 2009, at the hearing on the motion to dismiss the Martinez parties admitted they did nothing to enforce the order compelling disclosure of putative class members' contact information, which they argue was essential to advance their case toward trial, until after the Ninth Circuit affirmed the remand order on November 24, 2009. Nor did they seek a stay of state court proceedings while that appeal was pending from either the federal court of appeals or the superior court. The Martinez parties note that a CAFA appeal (if permitted)[13]

---

[13]    With limited exceptions, an order remanding a case to state court following removal is not reviewable on appeal. In adopting

16

proceeds on an expedited basis (see 28 U.S.C. § 1453(c)(2) & (3)) and, in light of the appeal, the question of federal or state jurisdiction remained open.  Yet they provide no explanation why any state court discovery obtained while the appeal was pending would not have been available for use in federal court if the remand order had been reversed and, therefore, why it was impracticable for them to continue to pursue discovery during that period.

In light of the Martinez parties' failure to exercise reasonable diligence in prosecuting their case between June 8 and November 24, 2009, it was not an abuse of discretion for the trial court to include that time within its calculation of the five-year mandatory period to bring the action to trial.  (See *Bruns*, *supra*, 51 Cal.4th at p. 731 ["[t]he reasonable diligence standard is an appropriate guideline for evaluating whether it was impossible, impracticable, or futile for the plaintiff to comply with [the statutory five-year constraint] *due to causes beyond his or her control*"; internal quotation marks omitted]; *Moran v. Superior Court* (1983) 35 Cal.3d 229, 228 [plaintiff's reasonable diligence is "critical factor" in evaluating impracticability of proceeding to trial]; see also *Lauriton v. Carnation Co.* (1989) 215 Cal.App.3d 161, 165 ["[s]ince appellant did not use every

---

CAFA and permitting removal of certain types of class action lawsuits, Congress provided, "a court of appeals may accept an appeal from an order of a district court granting or denying a motion to remand a class action to the State court from which it was removed if application is made to the court of appeals not more than 10 days after entry of the order."  (28 U.S.C. § 1453(c)(1).)

reasonable effort to bring the action to trial, he did not exercise reasonable diligence in prosecuting this case"].)

3. *Any Delay in Fully Complying with the Electronic Discovery Order Did Not Make It Impracticable or Futile To Bring the Case to Trial Within the Statutory Period*

"Generally, delays encountered in discovery are part of the 'normal delays involved in prosecuting lawsuits' and do not excuse failure to bring a case to trial within the five-year limit." (*Bank of America v. Superior Court* (1988) 200 Cal.App.3d 1000, 1016; see *Bruns, supra*, 51 Cal.4th at p. 731 ["'[t]ime consumed by the delay caused by ordinary incidents of proceedings, like disposition of demurrer, amendment of pleadings, and the normal time of waiting for a place on the court's calendar are not within the contemplation of these exceptions [for periods during which it was impossible, impracticable or futile to bring the action to trial]'"].) Notwithstanding this general rule, the Martinez parties contend Crab Addison and Joe's Crab Shack Holdings' delay in fully responding to their demand for discovery of emails relating to the "realistic expectations" for, and degree of independence and discretion enjoyed by, salaried employees at Joe's Crab Shack restaurants made it impracticable for them to move for class certification and bring their action to trial for the nine months between September 28, 2015, when the court granted in part their motion to compel, and the end of June 2016 when production of the electronically stored information was completed. It was not an abuse of discretion for the trial court to reject that argument based on counsel's lack of reasonable diligence.[14]

---

[14] Judge Goodman observed that there had not been vigorous law and motion practice by plaintiffs' counsel insisting on

As discussed, the electronic discovery at issue was not propounded until January 2015, more than seven years after the lawsuit was filed. During that time substantial class discovery had occurred and two motions for class certification were litigated. Yet the Martinez parties' suggest their delay in propounding this additional class discovery was excusable because it was based on guidance provided by our November 14, 2014 decision in *Joe's Crab Shack II*, *supra*, 231 Cal.App.4th 362. This argument is misplaced.

At the heart of the Martinez parties' claims of misclassification and unpaid wages is Industrial Welfare Commission (ICW) wage order No. 5-2001, which governs the "Public Housekeeping Industry," a category that includes restaurants (Cal. Code Regs., tit. 8, § 11050, subd. (2)(P)(1)). This wage order requires employers to provide overtime pay to employees working more than eight hours in one day or 40 hours in one week (*id.*, subd. 3(A)) but exempts from this requirement, among others, persons employed in managerial or executive capacities (*id.*, subd. 1(B)(1)). The wage order defines in general terms the nature of the duties and responsibilities of employees who fall with this category (*id.*, subd. 1(B)(1)(a)-(d)) and provides that the exemption applies to an employee who is "primarily" engaged in those activities (*id.*, subd. 1(B)(1)(e)), that is, "more than one-half of the employee's work time" is devoted to them (*id.*, subd. 2(O)). In determining whether the exemption applies,

---

immediate production of the electronic discovery during the four months he had been responsible for the case: "You weren't in here demanding. There were discussions. There were agreements. But there was no metaphorically pounding the table, saying, 'Where's the beef?'"

19

wage order No. 5 states, "The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, *together with the employer's realistic expectations and the realistic requirements of the job* shall be considered in determining whether the employee satisfies this requirement." (*Id.*, subd. 1(B)(1)(e), italics added.)

The significance of the employer's realistic expectations and the realistic requirements of the job in evaluating whether an employee was properly classified as exempt from overtime pay requirements, as set forth in various ICW wage orders, including wage order No. 5, was recognized nearly 20 years ago by the Supreme Court in *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 802 (in evaluating applicability of wage order exemption for outside salespersons, trial court should inquire into "the *realistic* requirements of the job"). And the need to focus on those realistic expectations and requirements to determine whether common issues predominate and a class action provides an effective means of resolving the plaintiffs' overtime claims— our holding in *Joe's Crab Shack II*, *supra*, 231 Cal.App.4th 362— was central to the Supreme Court's landmark class action ruling in *Sav-On*, *supra*, 34 Cal.4th at pages 336-337: "Any dispute over 'how the employee actually spends his or her time' [citation], of course, has the potential to generate individual issues. But considerations such as 'the employer's realistic expectations' [citation] and 'the actual requirements of the job' [citation] are likely to prove susceptible of common proof." (See *Joe's Crab Shack II*, at p. 382 [quoting this language from *Sav-On*]; see also *Duran*, *supra*, 59 Cal.4th at p. 54 (conc. opn. of Liu, J.) ["*Sav-On* made clear that variation in how employees spend their time does

not, by itself, preclude a finding that an employer's realistic expectations are susceptible to common proof"].)

Thus, well before our decision in *Joe's Crab Shack II*, counsel representing the Martinez parties should have realized the significance for class certification of the information requested by their January 2015 demand for electronically stored information.[15] To the extent they had not previously conducted discovery regarding Landry's Restaurants' and Crab Addison's realistic expectations and realistic job requirements for salaried employees at Joe's Crab Shack restaurants, the Martinez parties alone were responsible for that omission.

Indeed, nothing in our opinion indicated additional discovery was required or supplemental information needed before the trial court reevaluated the Martinez parties' class certification motion. To the contrary, based on the record before us, we held the class was adequately represented by Saldana, Eriksen and Rankin-Stephens and their claims were typical of the class, eliminating those issues from further consideration. (*Joe's Crab Shack II*, *supra*, 231 Cal.App.4th at pp. 375-377.) We then held the trial court had failed to adequately assess the means by which the Martinez parties' theory of recovery could be proved through common questions of fact and law, relying in substantial part on the Supreme Court's analysis in *Sav-On*

---

[15] The Electronic Discovery Act (Stats. 2009, ch. 5, § 1) establishing procedures to obtain discovery of electronically stored information was adopted by the Legislature as urgency legislation in 2009 and was effective June 29, 2009, two months after issuance of our remittitur in *Joe's Crab Shack I* and more than eight months before the trial court decided the first motion for class certification in this litigation.

21

(*Joe's Crab Shack* II, at pp. 382-383); and we directed the trial court to reconsider whether class certification provided a superior method of resolving their claims "[b]y refocusing its analysis on the policies and practices of the employer and the effect those policies and practices have on the putative class" (*id.* at p. 384)—information that already appeared in the record. (Compare *Lee v. Dynamex, Inc.* (2008) 166 Cal.App.4th 1325, 1339 [reversing denial of class certification and directing court, after ordering additional discovery, "to permit the parties to file supplemental papers regarding the propriety of class certification and to conduct a new class certification hearing"].)

The Martinez parties' election to conduct additional class discovery, rather than immediately renew their class certification motion, was a tactical decision. The time devoted to this discovery effort was properly included by the trial court in calculating section 583.310's five-year deadline. (See *Bruns*, *supra*, 51 Cal.4th at p. 731 [impossibility, impracticability or futility must be due to causes beyond plaintiff's control].)

4. *We Need Not Determine Whether This Court's Writ Review of the Order Compelling Disclosure of Putative Class Members' Contact Information Made It Impracticable or Futile To Bring the Case to Trial Within the Statutory Period*

In *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th 1325, we held the trial court's denial of the named plaintiff's motion to compel disclosure of potential class members' identity and contact information directly conflicted with the Supreme Court's decision in *Pioneer Electronics* (*USA*), *Inc. v. Superior Court* (2007) 40 Cal.4th 360, as well as two then-recent decisions from our

22

court,[16] and the erroneous discovery ruling improperly interfered with the plaintiff's ability to establish the necessary elements for class certification.  (*Lee,* at pp. 1329, 1338.)  Because the plaintiff lacked the means to develop evidence to support the motion for class certification, we declined to review that order and instead remanded the matter for additional discovery and a new class certification hearing.  (*Id.* at pp. 1338-1339.)

Relying on our holding that putative class member contact information is essential to a plaintiff's motion for class certification, as well as the principle that a class action is not ready to proceed to trial until the court has ruled on class certification (see, e.g., *Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069, 1083 ["in the absence of a defense waiver [trial courts] should not resolve the merits in a putative class action case before class certification and notice issues absent a compelling justification for doing so"]), the Martinez parties argue it was impossible to bring their action to trial during the 11 months that Crab Addison's writ petition challenging the trial court's order to produce that information was pending in this court.

In contrast, emphasizing that only production of putative class members' identity and contact information was stayed during the pendency of *Joe's Crab Shack I* and that other discovery took place while the writ petition was being litigated,

---

[16]     In addition to *Pioneer Electronics (USA), Inc. v. Superior Court*, *supra*, 40 Cal.4th 360, the trial court's discovery order conflicted with our decisions in *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242 and *Belaire-West Landscape, Inc. v. Superior Court* (2007) 149 Cal.App.4th 554.  (See *Lee v. Dynamex, Inc.*, *supra*, 166 Cal.App.4th at pp. 1337-1338.)

Landry's Restaurants argues the writ proceeding was one of the ordinary incidents of litigation and it was not an abuse of discretion for the trial court to include this period in determining the five-year deadline to bring the case to trial.

We need not resolve this issue. As extended by the period of removal to federal district court (75 days) and the appeal in *Joe's Crab Shack II* (958 days), but for the six-month provision in section 583.350[17] the time to bring the action to trial expired on July 7, 2015. Adding the time *Joe's Crab Shack I* was pending, however one calculates that time,[18] would still result in the five-year deadline falling at least several weeks prior to the filing of both the motion to dismiss and the Martinez parties' motion to sever and set for trial Martinez's individual claims. Accordingly,

---

[17] See footnote 12, above.

[18] As discussed, the Martinez parties contend 331 days should be excluded from the five-year deadline to bring the case to trial, measured from the trial court's order granting the motion to compel production on May 19, 2008 through issuance of our remittitur in *Joe's Crab Shack I*, *supra*, 169 Cal.App.4th 958 on April 13, 2009. However, because the notice of removal to federal court was filed on March 25, 2009, the final 19 days of this period is already excluded in evaluating the time to bring the case to trial. In addition, even if we were to reach the issue and agree with the Martinez parties' argument, it is unclear whether the affected period properly begins on May 19, 2008, when the trial court issued its order compelling discovery, as the Martinez parties' contend; May 29, 2008, when Crab Addison filed its petition for writ of mandate; or June 3, 2008, when we ordered Martinez to file a response to the writ petition and stayed enforcement of the trial court's orders to produce putative class members' identity and contact information.

any error in refusing to exclude this time from the five-year period would be harmless.

## DISPOSITION

The judgment is affirmed.  Landry's Restaurants is to recover its costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.


WILEY, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25

Filed 8/28/18

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| ROBERTO MARTINEZ et al., | B278513 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC377269) |
| v. | |
| LANDRY'S RESTAUANTS, INC., | ORDER CERTYFING OPINION FOR PUBLICATION (NO CHANGE IN JUDGMENT) |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed August 1, 2018 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request pursuant to California Rules of Court, rule 8.1120(a), for publication is granted.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.


_____

PERLUSS, P. J.        SEGAL, J.        WILEY, J.[*]

_____

[*]    Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2